## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PETE DEVAULT,

      Plaintiff,                       CIVIL ACTION NO. 14-11986

     v.                      DISTRICT JUDGE VICTORIA ROBERTS
                                MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

## II.    REPORT

### A.    Introduction and Procedural History

Plaintiff filed an application for Social Security Supplemental Security Income (SSI) benefits on August 1, 2012, alleging that he had become disabled and unable to work on August 1, 2012, at age 20, due to colitis, asthma, anemia, HIV, and left leg deep vein thrombosis. He also alleged disability due to various emotional difficulties. Benefits were initially denied by the Social Security Administration. A requested de novo hearing was held

on October 21, 2013, before Administrative Law Judge (ALJ) Janet Alaga-Gadigian. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of sedentary work providing a sit-stand option where he would not be exposed to air pollutants or workplace hazards. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 21 years old at the time of the administrative hearing (TR 43). He had been graduated from high school and had completed some college course work (TR 45). Claimant had no past relevant work (TR 47). Plaintiff alleged disability commencing in August 2012, primarily as a result of being HIV positive (TR 48). Other impairments which prevented him from working included ulcerative colitis, anemia, blood clots in his legs, asthma and emotional difficulties (TR 48). As a result of his multiple impairments, claimant alleged he was chronically fatigued, and that he needed to rest frequently throughout the day (TR 48-49). Plaintiff explained that he had to spend an inordinate amount of time in the bathroom as a result of rectal bleeding caused by his colitis (TR 49). Asthma prevented him from breathing normally, and frequent blood clots in his legs allegedly prevented him from standing or walking for prolonged periods (TR 50). Plaintiff added that he was frequently depressed, and had attempted suicide several times in the past few years (TR 52).

2

A Vocational Expert, Scott Silver, testified that there were no jobs for claimant to perform if his testimony were fully accepted[1] (TR 70). If he were capable of sedentary work, however, there were numerous unskilled surveillance monitor and data entry addresser jobs that he could perform with minimal vocational adjustment (TR 69-70). These jobs provided a sit-stand option at will with no need to operate foot controls. Climbing of ladders, ropes and scaffolding were not required, and there would be no more than an occasional need to balance, stoop, crouch, kneel or climb stairs. He would not be exposed to environmental irritants, hazardous machinery or unprotected heights. These simple, routine jobs would have minimal interaction with co-workers, supervisors or the general public (TR 68-69).

**B.     ALJ Findings**

The Administrative Law Judge found that Plaintiff was impaired as result of acute deep vein thrombosis of the left leg, left thigh vein thickening with partial compressibility, colitis, asthma, HIV, anemia, an adjustment disorder, major depression, psychosis, post-traumatic stress disorder and cannabis abuse, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's leg pain prevented him from operating foot controls, and limited him to jobs that allowed a sit-stand option at will. He could never climb ladders, ropes or scaffolding. He also had to avoid exposure to workplace hazards. Given his breathing problems, the ALJ further limited him to clean air environments. As a result of his

---

[1]The witness opined that, if claimant required regularly scheduled breaks lasting at least 60 minutes each time, all work activity would be precluded (TR 70).

3

emotional difficulties, the ALJ restricted him to simple, routine tasks that did not demand production quotas.  He could have just occasional interaction with co-workers, supervisors and the general public. Nevertheless, the ALJ found that the claimant retained the residual functional capacity to perform a significant number of sedentary jobs, as identified by the Vocational Expert (TR 20-34).

### C.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions.  Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).  This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989);  Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  Kirk, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court

would decide the matter differently, <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

### D.    Discussion and Analysis

After review of the record, I suggest that there is substantial evidence on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of sedentary work providing a sit-stand option where he would not be exposed to air pollutants or workplace hazards. Contrary to Plaintiff's assertion, the medical evidence does not support his allegations of totally disabling leg pain, chronic fatigue or mental depression. The ALJ's decision was consistent with the specific limitations imposed by examining physicians.

Claimant initially maintains that the ALJ failed to adequately evaluate his HIV impairment under section 14.08 of the Listing of Impairments (Plaintiff's Brief in Support of Summary Judgment at pp 18-20). Contrary to this assertion, the ALJ expressly considered section 14.08, and provided a detailed analysis to support her finding that claimant's HIV did not meet or equal the listing (TR 21-22). Plaintiff does not take issue with this analysis. The Law Judge also took into consideration the opinion of a state agency consultant[2], who concluded that the claimant's HIV did not meet or equal the Listing (TR 80-81).

Plaintiff next challenges the ALJ's determination that he could still perform a limited range of sedentary work, despite his physical and emotional problems. He claims that the

_____

[2]Under the regulations, ALJs "must consider findings of State agency medical and psychological consultants," but ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404.1527(f)(2)(I) (2015).

5

Law Judge did not discuss the objective evidence in the record, nor provide any factual basis for her decision (Brief in Support of Summary Judgment at p.11). In fact, the ALJ set forth a very detailed summary of the medical evidence including all treatment notes (TR 27-29). The Law Judge gave several reasons for finding that claimant's subjective allegations were unsupported by the evidence of record (TR 29-32). For example, treating doctors indicated that claimant's HIV was controlled with treatment (TR 723, 907). Similarly, Plaintiff reported that his colitis had improved, that he no longer experienced abdominal pain, and that his bowel movements were normal (TR 667, 906-907). Claimant also enjoyed full strength and range of motion in all extremities. He did not suffer from any neurologic abnormalities, and he could walk with a normal gait (TR 338, 833-834, 841, 872, 947-948).

While Plaintiff was treated at the emergency room several times due to alleged suicidal thoughts and/or hallucinations (TR 871-873, 932-937, 956-958), mental status evaluations after each episode were essentially normal. Claimant reportedly was fully oriented, exhibited normal psychomotor activity, maintained good eye contact, possessed normal speech, and had unimpaired memory, attention and intelligence (TR 834, 841, 865-866). He has also denied experiencing depression or having psychiatric issues on multiple occasions (TR 833, 840, 947). Significantly, Plaintiff reported having no problems maintaining attention, following instructions or getting along with others (TR 150-151, 417).

The ALJ also considered the fact that the claimant remained capable of caring for himself, fixing simple meals, doing the laundry and performing house cleaning duties. He also read books and internet articles, attended church, watched television and visited family

(TR 146-149, 577-579).  At times, he even felt physically and mentally fit to play basketball, go camping, and attend college (TR 864, 939).  There was no indication in the record that claimant needed to lie down frequently throughout the day.

Despite allegations that he needed to use the bathroom up to ten times a day, all gastrointestinal issues and abdominal pain reportedly had improved by May 2013 (TR 667, 906-907).  Plaintiff told his doctors afterwards that he only used the restroom once or twice per day, and that he had normal bowel movements (TR 667, 906). Claimant also denied experiencing fatigue on several occasions during the relevant period (TR 830, 832, 839).

Plaintiff relies heavily upon the fact that Dr. Wasif Hafeez stated in January 2013 that he exhibited marked limitations in social functioning, concentration and pace (TR 477). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government.  Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).  However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).  Since Dr. Hafeez offered little objective evidence to support his statement of marked limitations in social functioning, concentration and pace[3], his opinion

---

[3]The ALJ rejected the residual functional capacity assessment of Dr. Hafeez, setting forth persuasive reasons for doing so (TR 31). The ALJ expressed concern about the lack of medical documentation to support the opinion. As the ALJ noted, the statement that claimant had marked limitations in social functioning, concentration, persistence and pace was internally inconsistent with the doctor's overall conclusion that Plaintiff had no mental limitations (TR 31, 477, 479).  Claimant also acknowledged that he got along well with others (TR 150-151, 417). Nevertheless, the ALJ's expressly limited claimant to simple, "[non]rate production work", giving claimant the benefit of the doubt concerning his concentration and pace problems (TR 25).

7

need not have been given any special weight.  Miller v. Secretary, 843 F.2d 221, 224  (6th

Cir. 1988). Under these circumstances, the totality of the evidence must be considered.

Landsaw v. Secretary, 803 F.2d  211, 213 (6th Cir. 1986).

By establishing that he could not return to his past relevant work, the Plaintiff here

effectively shifted to the Commissioner the burden of proving that he had the vocational

qualifications to perform alternative jobs in the economy, notwithstanding his various

impairments. The Commissioner, however, met her burden of proving the existence of jobs

which accommodated claimant's known restrictions. In response to a hypothetical question

that took into consideration claimant's educational and vocational background, along with

his significant impairments[4], the Vocational Expert testified that there were numerous

unskilled surveillance monitor and data entry jobs that he could perform with minimal

vocational adjustment (TR 69-70).  These jobs provided a sit-stand option at will with no

need to operate foot controls.  Climbing of ladders, ropes and scaffolding was not required,

and there would be no more than an occasional need to balance, stoop, crouch, kneel or climb

stairs.  He would not be exposed to environmental irritants, hazardous machinery or

unprotected heights.  These simple, routine jobs would have minimal interaction with co-

workers, supervisors or the general public (TR 68-69). Given the objective clinical findings

of the examining physicians of record, I suggest that substantial evidence supports that

---

[4]Contrary to Plaintiff's assertion, the ALJ's hypothetical question to the vocational expert was not flawed because it did not include all his medically corroborated complaints. While Plaintiff contends that the ALJ improperly considered his non-compliance with medications, including cannabis abuse, the ALJ properly took this into consideration. Claimant's doctors repeatedly advised him stop using marijuana due to the hallucinations the drug produced (TR 201). Treatment notes often showed that claimant was non-compliant with his medications (TR 343, 864).

finding that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and I find insufficient evidence to conclude otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.   The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/ Charles E Binder

CHARLES E. BINDER
Dated: July 14, 2015                              United States Magistrate Judge