UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PETE DEVAULT,

                Plaintiff,         CASE NUMBER: 14-11986
                                    HONORABLE VICTORIA A. ROBERTS

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**ORDER**

I.    **BACKGROUND**

    **A.**    **Procedural Background**

Plaintiff Pete Devault ("Devault") filed an application for Social Security

Supplemental Security Income (SSI) benefits alleging a variety of physical and

psychological impairments and associated symptoms, in particular, those arising out his

HIV. The Defendant Commissioner of Social Security (the "Commissioner") denied

Devault's application initially and again on reconsideration. The Administrative Law

Judge ("ALJ") held a hearing and issued a Notice of Decision (the "Decision") that

Devault is not disabled. Devault brought this action pursuant to 42 U.S.C. § 405(g) for

judicial review of that Decision.

The Court referred the parties' cross-motions for summary judgment to

Magistrate Judge Charles E. Binder, who issued a Report and Recommendation

("R&R") recommending that the Court grant Defendant's motion and deny Devault's

1

motion. Devault filed an Objection to the R&R, raising issues with both the R&R and the Decision. The Commissioner's Response expresses general support for the R&R and the Decision, but does not otherwise respond to Devault's objections.

Magistrate Judge Binder's R&R thoroughly lays out the facts and remaining procedure of this case; the Court adopts them for this Opinion.

Devault's Objections (Doc. #23) are **GRANTED** in part and **DENIED** in part. The Magistrate Judge's Report and Recommendation (Doc. #22) is **ADOPTED** in part and **DENIED** in part. Defendant's Motion for Summary Judgment (Doc. #20) and Devault's Motion for Summary Judgment (Doc. #15) are **DENIED**. The Court **REMANDS** the matter to the Commissioner for further proceedings as outlined below.

### B.   Social Security Act Disability Benefits Framework

To be eligible for SSI disability insurance benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a), (d). A "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* § 423(d). "In Social Security cases, the Commissioner determines whether a claimant is disabled withing the meaning of the Act and therefore entitled to benefits." *Rogers v. Comm'r of Soc. Sec.*, 486, F.3d 234, 241 (6th Cir. 2007) (citing 42 U.S.C. § 405(h)). Administrative regulations require a five-step sequential evaluation for disability determinations, summarized in the following inquiries:

1.   Has the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?

2

3.      Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.      Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5.      Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work available in the national economy?

*Smith-Marker v. Astrue*, 839 F. Supp. 2d 974, 980-81 (S.D. Ohio 2012) (citing 20 C.F.R. § 404.1520(a)(4)). A claimant bears the ultimate burden to establish that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997). The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.2004). If the claimant does not sustain his or her burden of proof at any one of the first four steps, the inquiry ends; the claimant loses. *See* 20 C.F.R. § 416.920; *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

## II.     STANDARD OF REVIEW

The standard of review for a magistrate judge's R&R is distinct from the standard of review for the Commissioner's benefits decision.

When objections are made to a magistrate judge's R&R, the district court reviews the case *de novo*. Fed. R. Civ. P. 72(b). The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommend the matter back to the magistrate judge with instructions. For those aspects of the report for which no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.

The Court's review of a Commissioner's decision is to determine whether, in consideration of the record as a whole, the ALJ's decision is (1) supported by

3

substantial evidence and (2) was made pursuant to proper legal standards. Social Security Act § 205(g), 42 U.S.C. § 405(g) (2006 & Supp. 2011); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). "Substantial evidence" supporting a denial of social security disability benefits is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. 42 U.S.C. § 405(g). In deciding whether to affirm the Commissioner's decision, it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir.1999).

The second aspect of review - of the legal criteria - may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. A reversal may occur when the ALJ fails to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson*, 378 F.3d at 546–47). "A procedural right must generally be understood as "substantial" in the context of this statement when the regulation is intended to confer a procedural protection on the party invoking it." *Wilson*, 378 F.3d at 547.

## III.   DISCUSSION

Devault's objections fall into three categories: (1) the ALJ improperly determined the weight of evidence, in particular, the credibility of Devault's physician, Dr. Wasif Hafeez, and failed to articulate sufficient reasons for the ALJ's rejection of the medical

4

opinion; (2) Magistrate Judge Binder failed to properly evaluate the ALJ's compliance with the narrative and explanation requirements of Step Three of the disability evaluation process codified in 20 CFR 416.920(a); and (3) the ALJ conducted an inadequate residual functional capacity (RFC) analysis.

The Court evaluates Devault's objections in light of the Decision, the R&R, and the record as a whole. Applying the relevant standard of review, the Court remands because the ALJ failed to follow certain regulations and requirements, depriving Devault of substantial rights.

### A.   Objection 1: Medical Opinion Evidence

Devault's first objection relates to the ALJ's treatment of the medical opinion evidence in the record. The objection has two distinct aspects: (1) Devault insists the ALJ had investigation obligations pursuant to Social Security Ruling 96-5p and (2) Devault questions the reasoning and weight given to Dr. Hafeez's medical opinion evidence.

### 1.   Sub-Objection 1: Duty to Investigate

Devault asserts that the ALJ failed to conduct requisite additional investigation into the basis of Dr. Hafeez's medical opinion. The Court rejects this challenge.

Social Security Ruling 96-5p requires the ALJ to conduct additional research under carefully circumscribed situations, namely:

> *if* the evidence does not support a treating source's opinion on any issue reserved to the Commissioner *and* the adjudicator cannot ascertain the basis of the opinion from the case record, [only then] the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.

TITLES II AND XVI: MEDICAL SOURCE OPINIONS ON ISSUES RESERVED TO THE COMMISSIONER, Social Security Ruling (SSR) 96–5, 1996 WL 374183, at *6 (July 2, 1996) (emphasis added). The ALJ must contact a physician only when the record is an inadequate source of information; it is not a universal obligation ALJs have every time they disagree with a treating source's opinion.

Devault cites *D'Angelo v. Comm'r. of Soc. Sec.*, 475 F. Supp. 2d 716 (2007), as authority for an expansive reading of an ALJ's further inquiry obligations. Brief at 2. *D'Angelo*, however, is distinguishable. In *D'Angelo*, the court discussed investigative requirements both for and against granting benefits in the context of two salient facts: first, that plaintiff was unrepresented by counsel, which created a risk that all relevant facts might not be brought to the ALJ; and second, the record included virtually no medical records of that plaintiff's treatment with a particular physician. *D'Angelo*, 475 F. Supp. 2d at 722.

Where the record is robust, as it is here, and where plaintiff is represented by counsel, as Devault is, an ALJ may rely on the circumscribed language of Social Security Ruling 96-5p and recontact a treating physician only when the ALJ is confused as to how a treating source came to his or her conclusion.

This record is complete: it indicates that the ALJ disagreed with Dr. Hafeez's recommendations, not that the ALJ was confused as to how Dr. Hafeez came to his conclusion. Consequently, a remand ordering the Commissioner to obtain Devault's records would prove fruitless.

        **2.**        **Sub-Objection 2: Evaluation of Medical Expert Opinions**

Devault asserts that the ALJ failed to comply with an obligation to assert valid

reasons for rejecting a medical opinion. The Court agrees with this objection; the legal analysis is insufficient and remand for further consideration is necessary.

The Social Security Administration must provide the weight it gives a treating source's opinion when making a disability determination. *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(d)(2) [now (c)(2)]). Moreover, Social Security regulations require "the agency to 'give good reasons' for not giving weight to a treating physician's opinion in the context of a disability determination." *Id.* In such circumstances, the ALJ must also assess certain factors mandated by the regulations, namely: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.*

The ALJ discussed some aspects that impacted the weight given to treating source Dr. Hafeez's opinion. In particular, the Decision addresses consistency of the opinion with the record as a whole and the supportability of the opinion. The length of the treatment relationship is also mentioned, Transcript of Social Security Proceedings at 27, Devault v. Comm'r. of Soc. Sec. Admin., No. 14-11986 (E.D. Mich July 28, 2014), but not in the section that discusses the weight given to Dr. Hafeez's opinion. *Id.* at 30-31. The ALJ did not provide a full analysis of the regulatory factors, namely: the frequency of examination, the nature and extent of the treatment relationship, and Dr. Hafeez's specialization. These factors should have been explicitly discussed in conjunction with the section that determined the weight given to Dr. Hafeez's opinion.

In *Wilson*, the Sixth Circuit found an absence of good reasons when the ALJ did not clarify whether the physician's opinion was "well-supported by medically acceptable

7

clinical and laboratory diagnostic techniques . . . and did not explain its application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight given to [the physician's] opinion." *Wilson*, 378 F.3d at 546. The *Wilson* panel held that a failure to give "good reasons" did not constitute harmless error, even if "there is sufficient evidence in the record for the ALJ to discount the treating source's opinion." *Id.* Consequently, the Court remands for further evaluation of the weight given to Dr. Hafeez's medical opinions.

### B.     Objection 2: Step Three of the Disability Evaluation

Devault's second objection relates to the ALJ's treatment of Step Three of the sequential analysis. Devault makes sub-claims alleging: (1) an improper evaluation of listing 14.00 and 14.08, and that the ALJ should have evaluated other conditions or symptoms in conjunction with HIV analysis, and (2) the ALJ did not determine whether Devault's impairments equaled any of the appropriate listings.

### 1.     Sub-Objection 1: Evaluation of Chapter 14 Listings

Devault objects to the ALJ's analysis regarding chapter 14 of the listings pertaining to HIV, including 14.00 and 14.08. The Court finds the ALJ did not err.

Heading 14.00 sets forth standards of review, guidelines and definitions for a variety of conditions, including HIV, which is addressed in 14.00F. No disability determination could result from evaluation of this heading, because it only refers to acceptable documentation for HIV infection and its manifestations. Regardless, Devault does not explain the source of any deficiency in the 14.00 or 14.00F evaluation.

With respect to 14.08, Devault suggests that the ALJ should have evaluated his

opportunistic infections: candidiasis, blood clots, severe weight loss, and anemia related to the HIV. Devault does not tie those ailments to a 14.08A-J listing.

Only where the record raises a substantial question as to whether the claimant could qualify under a listing should the ALJ discuss that listing. *Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 641 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). Where the plaintiff fails to describe how a listing's elements are met and fails to mention a particular listing, the Court will not conjecture about what arguments that plaintiff might raise and how that plaintiff might be eligible to recover. Instead, the Court will find that the open questions are not substantial questions that justify remand. *See Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *14 (E.D. Mich. Mar. 31, 2014) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.")).

Neither the Complaint, Devault's Motion for Summary Judgment, nor Devault's Objection sufficiently articulates eligibility or specific analytical error under any of the 14.08A-J listings. Thus, there is no error with respect to 14.08A-J.

Finally, the court evaluates listing 14.08K. Devault generally alleges that the ALJ erred in mentioning that Devault had manifestations of HIV but only discussed one manifestation: diarrhea. The Court evaluates whether a failure to list any of the conditions mentioned in the above 14.08A-J discussion would constitute an error for listing 14.08K. 14.08K states:

9

> K. Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A–J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

14.08K requires the ALJ to first identify some manifestation of HIV that results in significant, documented symptoms or signs. Then, by virtue of 1-3 above, the ALJ is required to assess the impact that the manifestation had on three aspects of claimant's life. Unlike 14.08A-J, which prescribe elements and exact severity requirements, the second part of 14.08K calls upon the ALJ to conduct a more open-ended examination of the impact of a claimant's manifestations. Moreover, the text of the listing does not mandate the ALJ evaluate each limitation individually, but rather speaks in plural terms: "*manifestations* . . . resulting in significant, documented *symptoms* or *signs*" and one limitation. Thus, failure to list all possible manifestations is not error so long as at least one sufficiently severe manifestation was raised and the ALJ conducted a thorough analysis of the claimant's degree of limitation.

The ALJ carefully parsed 14.08K. She assumed the existence of manifestations that met the "repeated" hurdle and assumed that the record made a sufficient case for a finding of "significant, documented symptoms or signs," and then evaluated each of the three categories of limitation. Transcript at 22. After balancing the evidence in the

10

record, the ALJ made a determination about the severity of each limitation category, concluding that no limitation reached a marked level. Significantly, the ALJ made this determination "considering the manifestations of HIV infection in combination with the claimant's mental impairments," which indicates that the ALJ did not confine the scope of analysis to only one manifestation. Although the ALJ could have listed all possible manifestations under 14.08K, the Court finds that her failure to do so was harmless; the ALJ reached the second step of the inquiry and conducted adequate review of limitations as required by the statute.

Accordingly, the Court finds the discussion related to 14.08K was without error.

### 2.      Sub-Objection 2: "Equaled" Analysis Under Step Three

An ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equaled in severity to the medical findings for any listed impairment. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011).  The statutes stipulate that medical equivalence can be found in three ways: (1) the claimant has a listed impairment but does not exhibit the specified severity or findings, yet has "other findings" that are "at least of equal medical significance" to the criteria; (2) the claimant has a non-listed impairment that is "at least of equal medical significance" to a listed impairment; or (3) the claimant has a combination of impairments which do not individually meet a listed impairment, but are "at least of equal medical significance" to a listing when viewed in totality. *Reynolds*, 424 F. App'x at 414 n.2 (citing 20 C.F.R. §§ 404.1526, 416.926).

Devault claims that the ALJ should have evaluated several impairments and symptoms collectively to determine whether any listing was equaled. While the ALJ

11

concluded none of the listings was equaled by Devault's combined physical and mental impairments, the Court cannot find support for that conclusion. The ALJ considered the net impact of a variety of conditions in conducting an assessment of whether 14.08K was met, but that analysis excluded consideration of a few conditions that Devault raises on appeal. Thus, the Court must decide whether the analysis under 14.08K - which the Court considers a "catch-all" provision of sorts - is sufficient enough to constitute adequate analysis as to whether any listing was "equaled."

In *Reynolds*, the court held "the ALJ erred by failing to analyze [the claimant's] physical condition in relation to the listed impairments," "despite his introduction concluding that they did not." *Reynolds* stands for the proposition that it is insufficient to simply conclude that all listings are not equaled without a more tailored explanation.

14.08K serves as a catch-all way for the 14.08 listing governing HIV disability. It requires repeated manifestations of HIV infection that do not meet the elements of listings 14.08A-J to yield marked limitations on the claimant's life.

Although the ALJ conducted a thorough review of listings 4.11, 5.06, 5.08, 7.02, and 14.08A-K, the ALJ failed to recognize and discuss the impact of several combined impairments. Because 14.08K is itself a listing, § 416.926 requires the ALJ to conduct further inquiry beyond whether or not there are marked limitations in the three categories. The distinction between a catchall under 14.08K and equivalency under § 416.926 is subtle, yet important. Proper analysis under § 416.926 requires after the ALJ determine that there is not one marked limitation in a 14.08K category, the ALJ next consider whether the cumulative effect of limitations (whether slight, minor, or moderate), as well as all medically supported severe impairments, is enough to equal

12

any listing provided for in the Listing of Impairments, especially 14.08K.

The outcome of a thorough § 416.926 analysis under Step Three might well turn out to be the same outcome reached with respect to the 14.08K factors, but in order for the § 416.926 conclusion to be valid, the ALJ must expressly state all of Devault's impairments, the effect that each has, and discuss whether their net impact equals a listing. The Sixth Circuit holds that an insufficient discussion or reasoning with regard to the equivalency analysis is error and is not harmless. *See Reynolds*, 424 F. App'x at 416. Consequently, the Court remands for the ALJ to conduct further analysis with respect to the equivalency component of Step Three.

### C.      Objection 3: RFC Assessment

Devault's third objection concerns the ALJ's assessment of his RFC and Magistrate Judge Binder's endorsement of the ALJ's findings. Devault's objection concerns two topics: (a) the narrative discussion requirements under the statute and Social Security Ruling 96-8p; and (b) his disagreement with the RFC assessment and ultimate RFC determination reached in Step Five.

### 1.      Sub-Objection 1: Sufficiency of RFC Analysis and Narrative Discussion

Devault says RFC assessment narrative discussion requirements were not adequately followed. The Court disagrees.

If a claimant's impairments do not meet or equal a listed impairment, the Commission will make a determination about a claimant's RFC - the most the claimant can still do despite limitations - based on all the relevant medical and other evidence in the case record. 20 C.F.R. § 416.920; 20 C.F.R. § 416.945. In evaluating work

capabilities, SSR 96-8p required the ALJ to consider Devault's physical abilities and limitations, his mental abilities and limitations, and his other abilities and impairments. The RFC assessment must describe how the evidence supports each conclusion [in these categories], citing specific medical facts and nonmedical evidence, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p at *34478.

Devault asserts that certain impairments and symptoms were established but neglected by the ALJ during the RFC analysis.  These are: left thigh vein thickening with partial compressibility, colitis, asthma, HIV+, anemia, adjustment disorder, major depressive disorder, psychosis, post traumatic stress disorder, cannabis abuse, leg swelling, deep vein thrombosis, and pain.

Each of these allegations is unsubstantiated. In fact, the ALJ spends nearly 9 pages of analysis assessing Devault's RFC, a full 4 pages of which is dedicated to a factual recitation of the key medical findings and determinations. At numerous points during the RFC assessment, the ALJ mentions each of the impairments Devault claims are "never discussed" in the Decision.

The ALJ conducted a thorough analysis that weighed medical and lay opinions, in search of a longitudinal trend over time. The Decision also scrutinizes credibility by comparing statements from multiple sources. Far from cherry picking, as Devault suggests, the ALJ cites evidence that both supports the finding of a disability and a finding that Devault is not disabled. Moreover, the record contains a robust consideration of each category of work ability (physical, mental, and other). *See* Transcript at 31-33.

14

There was no error with regard to SSR 96-8p and the narrative discussion requirements.

### 2.   Sub-Objection 2: Use of RFC in Finding Available Work Under Step Five

At Step Five, the ALJ determines whether there is other work [besides past relevant work] the individual can do. SSR 96-8p at *34476. Devault's objects that "When one considers the serious physical and emotional problems of Plaintiff's, work does not exist in significant numbers that he can perform." Objection at 8. This objection does not quarrel with the number of jobs available in the economy; rather, it reiterates an objection to the ALJ's determination that Devault has an ability to do unskilled work notwithstanding moderation limitations in concentration. This objection has no merit.

The individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. SSR 96-8p at *34476. The ALJ's decision specifically discusses Devault's moderate deficits in concentration and moderate social deficits. The ALJ uses the presence of these deficits to constrain Devault's work-related abilities to "unskilled work, which involves simple tasks," to recommend that Devault "should have only occasional contact with the public, co-workers and supervisors," and to "preclude [Devault] from production rate pace stress and tandem tasks at work." Transcript at 32.

With respect to Devault's third objection, the Court finds no error that undermines the ALJ's decision.

### IV.   CONCLUSION

Based on the foregoing, the Court **DENIES** both motions for summary judgment

15

and **REMANDS** the matter to the Commissioner to conduct further proceedings consistent with this decision. In particular, the Commissioner should (i) re-address the reasons for the weight given to medical opinions, including Dr. Hafeez's; and (ii) consider whether the total combination of Devault's impairments satisfies equivalency requirements under Step Three.

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 21, 2015

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 21, 2015.

s/Linda Vertriest
Deputy Clerk